**KENTUCKY SPORTS CONCEPTS, INC., et al., Plaintiffs**

v.

**A.B. CHANDLER, III, et al., Defendants.**

**No. CIV.A. 3:98–CV–37–H.**

United States District Court, W.D. Kentucky, Louisville Division.

March 6, 1998.

Robert D. McClure, Kruger, Schwartz & Morreau, Louisville, KY, Arthur Schwartz/Michael W. Gross, Denver, CO, for Plaintiffs.

Lawrence E. Osterhage, N. Scott Lilly, Office of the County Attorney, Louisville, KY, for Defendants.

## AMENDED MEMORANDUM OPINION

HEYBURN, District Judge.

This past December, Troy Lowrie applied for a permit to operate a "place of entertainment" in Jefferson County pursuant to KRS 231. Several weeks ago, the Jefferson County Judge Executive David Armstrong denied the application.[1] Armstrong based his decision on the recommendation of assistant county attorney Lawrence Osterhage who conducted an investigation as required by KRS 231. Osterhage concluded that Lowrie's 21 violations of state ABC regulations suggested an inability to obey the laws of the state in the carrying on of the business.[2] Osterhage made no findings in regard to Lowrie's moral character and Armstrong did not consider this factor in evaluating Lowrie's application.[3]

Now pending before the Court is the request of Kentucky Sports Concepts ("KSC") to prohibit the enforcement of the County Judge's order and to order issuance of the permit because the entire statute is unconstitutional. KSC argues that KRS 231.030 is so vague and overbroad that it constitutes an invalid prior restraint on expression protected by the First Amendment. Such an attack on a statute is called a facial challenge. It is an extraordinary remedy.[4]

---

1. Pursuant to KRS 231.030, "[n]o permit shall be issued to a person who is not of good moral character or who will not, in the judgment of the court, obey the laws of the state in the carrying on of the business or who within two (2) years prior to the date of the filing of the application has been convicted in Kentucky of maintaining a public nuisance."

2. All but one violation involved 804 KAR 5:060, which prohibits lewd, immoral, or obscene entertainment. The other involved employment of an underage worker in violation of 804 KAR 5:070. See Agreed Order, In the Matter of Kentucky Restaurant Concepts, Inc. d/b/a P.T.'s Showclub, Case No. A005714–9–01–97.

3. At the January 20 hearing on Lowrie's application, in addition to testimony regarding the ABC violations, there was substantial testimony regarding the deleterious effects of the planned establishment and the allegedly poor moral character of Lowrie. See Letter to Judge Armstrong from James A. Smith, Alcoholic Beverage Administrator, January 28, 1998.

4. Ordinarily, a facial challenge is available only if one alleges that the offending statute is invalid

In the arena of free speech or protected expression, a plaintiff may facially challenge a law on grounds of vagueness or overbreadth by showing that the law poses significant risks of censorship.[5] Whether KRS 231 poses such a risk and, thus, fits within this narrow exception, is the key question presently before this Court. That Lowrie hopes to offer nude dancing at his sports bar is inconsequential to the Court's analysis and conclusion. Whether the applicant offers performances by Holly Montana, Garth Brooks or Beethoven would not affect the result. The issue is not the nature of the entertainment but the nature of the statute.[6]

### I.

To resolve this threshold issue, the Court must absorb the teachings of *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), Justice Brennan's definitive exposition of facial challenges on First Amendment grounds. If this Court permits a facial challenge, KSC would surely prevail on its argument that the statutory standards governing the issuance of entertainment licenses are impermissibly vague under the First Amendment.[7] *See East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 227 (6th Cir.1995) (striking down similar licensing standards on grounds of vagueness). If KRS 231 is not subject to facial challenge, *East Brooks*

*Books* is inapplicable and KSC must look elsewhere for a basis to challenge denial of its permit application.

How could it be that the vague and overbroad provisions of one statute are stricken because they threaten free expression, while the virtually identical provisions of another statute might be allowed to stand? Understanding *Lakewood's* nuances as applied to the particular licensing scheme at issue provides the answer. In *Lakewood, supra*, the Supreme Court struck down a licensing scheme governing the placement of newsracks on public property as unconstitutional on its face. In reaching the conclusion that the ordinance was impermissibly vague, the Court enunciated the test for determining whether a licensing scheme is subject to facial challenge on First Amendment grounds. In doing so, Justice Brennan sought to provide a standard that would adequately protect against the twin dangers of censorship posed by unbridled licensing schemes: (1) self-censorship by those fearing denial of a license and (2) the difficulty of evaluating "as applied" challenges when there are no clear standards against which to measure to conduct of the licensing authority. *See Id.* at 2145. "It is when statutes threaten these risk to a significant degree that courts must entertain an immediate facial attack on the law." *Id.*

---

5. That Plaintiffs themselves wish to exercise rights of expression protected by the First Amendment is incidental to this challenge. Any person covered by Chapter 231, whether they engage in protected expression or not, and whether or not they have applied for a permit, could bring a facial challenge. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 2143–44, 100 L.Ed.2d 771 (1988).

under any conceivable application. For example, if KSC were to allege that KRS 231.030 vested the County Judge with unbridled discretion in violation of its 14th Amendment right to due process, it would have to show that the law was "impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Moreover, "economic regulation is subject to a less strict vagueness test" than that applied to speech-related regulations. *Id.* However, a less stringent standard applies in a First Amendment context.

6. A community group, IMPACT, has filed an amicus brief, arguing, among other things, that to void the statute would disenfranchise citizens who oppose businesses they believe are repugnant to their community. If, in fact, this were the purpose of this statute, then it should be voided. If the statute merely provides a venue for officials to approve or deny permits based upon the public acceptability of the expressive entertainment offered, this would be an unconstitutional application of the statute.

7. In *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 226–27 (6th Cir.1995), the Sixth Circuit invalidated on vagueness grounds an ordinance allowing the Chief of Police Services to deny a permit to operate a sexually oriented business if an applicant "has demonstrated an inability to operate or manage a sexually oriented business premises in a peaceful and law-abiding manner, thus necessitating action by law enforcement officers." The standards for denying an entertainment license in KRS 231 are arguably vaguer.

The resulting test for measuring the risks of censorship associated with an unbridled licensing scheme is as subtle as it is insightful. According to *Lakewood*, a facial challenge is available "whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *Lakewood*, 108 S.Ct. at 2145. But not just any unbridled licensing scheme will meet this requirement. "The law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." *Id.* In *Lakewood*, the licensing scheme for newsracks sufficiently threatened these risks to justify a facial challenge.[8]

■ Notice that the mere possibility that a licensing scheme could be used to engage in censorship is not enough to justify a facial challenge. The law must be sufficiently speech-related to pose those substantial risks of censorship on an ongoing basis. In short, the *Lakewood* test requires a very practical inquiry into whether the licensing law is structured in a manner which provides easy *and* ample opportunities for suppression of protected speech. In this respect, not all licensing schemes are created equal. As noted in *Lakewood*, unfettered discretion in the licensing of newsracks poses substantial censorship risks, while the same level of discretion in the licensing of soda vendors would not. *See Lakewood*, 108 S.Ct. at 2146.

8. The Court focused on two problems with the licensing scheme. First, the requirement that licenses be renewed annually encouraged self-censorship. Second, the scheme was specifically directed at the circulation of newspapers. The Court found that a licensing scheme "directed narrowly and specifically at expression or conduct commonly associated with expression ... creates an agency or establishes an official charged particularly with reviewing speech, or conduct associated with it, breeding an 'expertise' tending to favor censorship over speech." *Id.* at 2145.

9. Nonetheless, the *en banc* Seventh Circuit opinion in *Graff v. City of Chicago*, 9 F.3d 1309 (7th Cir.1993) highlights the possibility of sharply conflicting views about whether seemingly clear factual situations belong on the spectrum at all.

In effect, the *Lakewood* test sets up a spectrum between "laws directed narrowly and specifically at expression" and "laws of general application that are not aimed at conduct commonly associated with expression ...." *Id.* at 2145–46. In some cases, the challenged law will fall toward one extreme or another, making the nexus determination relatively straightforward. *See Gannett Satellite Information Network, Inc. v. Berger*, 894 F.2d 61, 69–70 (3rd Cir.1990) (general regulation of "commercial activity" did not meet nexus requirement); *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir.1996) (insufficient nexus where ordinance banned sitting or lying on sidewalks).[9] Sometimes, however, it is more difficult to distinguish those licensing schemes posing a serious enough risk to protected expression to merit facial challenge and those which are only blunt instruments to suppress disfavored speech. This is one of those cases.

## II.

■ Through the insightful lens of Justice Brennan's analysis, the Court must understand the true scope of KRS 231. KRS 231 requires those seeking to operate a "place of entertainment" outside the city limits to obtain a permit. *See* KRS 231.020. The statute defines "place of entertainment" as follows:

> As used in this chapter, "place of entertainment" means a roadhouse, place offering intoxicating or nonintoxicating drinks for sale, tourist camp or place of public entertainment at which people assemble to

In *Graff*, the Seventh Circuit upheld the constitutionality of a municipal licensing scheme for news stands. The principal opinion, in which five judges joined, analyzed the ordinance as a reasonable time, place, and manner restriction on conduct. The other seven members of the panel, who joined the concurring and dissenting opinions, found that the case was indeed about speech and not about conduct, though two would still have denied a facial challenge. Because the facts in *Graff* are so different from the facts in this case, the various opinions provide little guidance. Frankly, the principal opinion's characterization of the news stand ordinance as not related to speech seems awkward. However, regardless of approach, the Seventh Circuit's holding is not inconsistent with the Court's ultimate conclusion in this case.

eat, drink, dance, bathe, or engage in any game or amusement, or any place having therein or thereon any person engaging in the practice of being a medium, clairvoyant, [etc.] ... but this last clause shall not be construed to apply to persons pretending to tell fortunes as part of any play, exhibition, fair or amateur show presented or offered by any religious, charitable, or benevolent institution.

KRS 231.010. The statute exempts from the definition private homes, drive-in theaters, filling stations, grocery stores, and temporary entertainment such as carnivals and circuses. *Id.*

On its face, KRS 231 is not directed at speech. Though the statute refers to "entertainment" one must look to the statute itself, rather than to generic definitions, to understand whether its words pertain to predominantly expressive activity.[10] Thankfully, KRS 231 provides some guidance. Its language and intent appear to focus on establishments like roadhouses, restaurants, and bars which do not necessarily engage in protected expression. *See Ratliff v. Hill,* 293 Ky. 36, 168 S.W.2d 336, 338 (1943) (focusing on legislative intent to regulate hazards associated with roadhouses). However, the law is also not a general economic regulation, because it is somewhat limited in scope and exempts certain commercial activities from the licensing requirements. *See Commonwealth v. Polley,* 298 Ky. 294, 182 S.W.2d 769 (1944) ("It is not every place of entertainment outside of an incorporated city that must secure a permit to operate but only places of entertainment of the character defined by KRS 231.010.").

What is clear from the definition of "place of entertainment" is that it is broad enough to embrace some establishments which might seek to engage in protected expression. A nightclub featuring any sort of live entertainment, even nude dancers like that proposed by KSC, would arguably qualify as a "place

of entertainment" in several respects: as a "roadhouse," a "place offering intoxicating ... drinks for sale" and arguably as a "place of public entertainment at which people assemble to ... engage in ... amusement ...." KRS 231.010.[11] Movie theaters, any restaurant, bar or coffee house, book stores which offer food or refreshment, and perhaps even movie rental stores might be covered by the statute.

But the issue cannot simply be whether in a particular limited set of circumstances the statute would permit a public official to suppress expression. The Supreme Court ruled out this possibility with the example of a licensing scheme for soda vendors. *See Lakewood,* 108 S.Ct. at 2146. In theory, a certain soda vendor may desire to engage in expression. That vendor might be denied a permit because local officials dislike his message. Nonetheless, a facial challenge would not be available to him, because the activity of speech is not sufficiently related to the activity of selling soda. This distinction is critical. Without it, even the most tangentially speech-related licensing scheme would be vulnerable to facial challenge on First Amendment grounds. The exception for free speech cases would swallow the rule.

Therefore, the availability of a facial challenge in this case depends on whether the nexus between KRS 231 and protected expression poses a substantial threat of the twin dangers of which Justice Brennan has warned. Does this licensing scheme provide public officials with frequent opportunities for censorship which cannot be controlled? Does it stymie the ability of plaintiffs to enforce their rights to free expression through the preferred mechanism of the "as applied" challenge?

Consistent with the teaching of *Lakewood,* the answer to these critical questions may depend on the extent to which the applicant pool for entertainment licenses is expected to

---

**10.** Notably, the definition of "place of entertainment" in KRS 231 does not expressly mention any expressive activities. *Cf. Admiral Theatre v. City of Chicago,* 832 F.Supp. 1195, 1202 (N.D.Ill. 1993) (challenged ordinance defined "amusement" to include theatrical, musical, and dancing performances); *TJ's South, Inc. v.. Town of Lowell,* 895 F.Supp. 1124, 1126 (N.D.Ind.1995)

("entertainment" defined to include musical performances and comedians).

**11.** Under the Supreme Court's decision in *Barnes v. Glen Theatre, Inc.,* 501 U.S 560, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991), nude dancing counts as protected expression, albeit "only marginally so."

be composed of establishments seeking to engage in protected expression. If the class of establishments seeking permits is expected to include many applicants seeking to present protected expression such as nude dancing, theatrical performances, or live music, then there would be frequent opportunities for someone to censor disfavored speech. Conversely, if the category "places of entertainment" is only minimally correlated with protected expression, then KRS 231 would be "too blunt a censorship instrument to warrant judicial intervention prior to an allegation of actual misuse." *Lakewood*, 108 S.Ct. at 2146.

### III.

■ Taking all of the relevant factors into consideration, the Court concludes that KSC has failed to meet the nexus requirement in this case. Who could deny that the unbridled discretion afforded in KRS 231.030 may offer an opportunity for censorship in those situations in which an applicant seeks to engage in protected expression. However, the mere possibility of censorship is not enough to support a facial challenge. The facial challenge is disfavored as a means of enforcing constitutional rights—it is treated essentially as a last resort. Even in a First Amendment context, the facial challenge is most appropriate when a statute poses such a threat of censorship that we cannot safely rely upon challenges on an "as applied" basis to enforce the right of free expression. Accordingly, a facial challenge is available only upon a showing that an unbridled licensing scheme affords public officials with "substantial power to discriminate" such that there is "a real and substantial threat" of risks which Justice Brennan identified. *Lakewood*, 108 S.Ct. at 2145.

The nexus requirement of *Lakewood* is a practical way of gauging whether a licensing scheme has the potential to unfairly restrict free expression. Of course, the closer the relationship between the statute and speech-related activities, the greater the dangers of censorship. In this case, KSC has failed to demonstrate the required relationship between the challenged law and speech. Un-

like the ordinance regulating newsracks in *Lakewood,* the law is not directed narrowly and specifically at speech.[12] Moreover, the law is not directed at activities closely associated with speech.

The broad coverage of KRS 231 suggests that applicants seeking to engage in protected expression would make up a relatively small proportion of the applicant pool. The full array restaurants, from Lilly's to McDonald's, and all varieties of watering holes would be expected to far outnumber the occasional theater or nude dancing club. Proportionately, the opportunities to suppress speech would be few and far between.

For Justice Brennan, the significance of this fact is that if expressive conduct were treated differently under this regulatory scheme, it would be easy to identify the discrepancy. This statute has functioned for 50 years, serving some presumably legitimate public purpose. If authorities now begin interpreting it differently to disfavor Miss Montana in favor of Mr. Brooks, it will be relatively easy to determine as it is applied.

The result might be different should KSC demonstrate that at least some of the forms of "entertainment" enumerated in the statute were, as an empirical matter, closely related to speech. For example, KSC could in theory show that roadhouses locating outside the city limits invariably seek to provide live entertainment of one sort or another. However, evidence of this sort is lacking. There is simply no indication that the operation of KRS 231 would present frequent opportunities to suppress disfavored speech. Rather, the regulation of speech would seem to be an incidental side-effect of an otherwise valid licensing scheme.

Thus, as to the availability of a facial challenge, this case is readily distinguishable from *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220 (6th Cir.1995), where the court invalidated a licensing scheme for "sexually oriented businesses." While the Memphis ordinance was "directed narrowly and specifically at expression," KRS 231 is

---

**12.** KRS 231 also lacks the sort of license renewal requirement which would encourage self-censorship among those desiring to keep their permits.

not even directed at "conduct commonly associated with expression." *Lakewood,* 108 S.Ct. at 2145. There is no indication that the operation of a roadhouse or bar is more than loosely associated with protected expression. Moreover, due to the lack of a focus on nude dancing or any other form of protected expression, KRS 231 presents little if any risk of "breeding an 'expertise' tending to favor censorship over speech." *Id.*

In the language of *Lakewood,* KRS 231 is less like a licensing scheme for newsracks and more like one for soda vendors. It more resembles a general economic regulation than a speech-targeted law. As a result, KRS 231 does not place substantial censorship powers in a particular agency or public official; an official bent on suppressing disfavored speech would find the law to be only a blunt censorship instrument. This is not to say that KRS 231 could never be used as an instrument of censorship. Indeed, even the most general economic regulation could be enlisted in aid of such nefarious purposes.[13] The point is that the risk of such abuse is not great enough to justify the full judicial power of the facial challenge. Rather, an "as applied" First Amendment challenge is the appropriate remedy for misuse of this broad licensing law.

## IV.

 Kentucky Sports Concepts has asked this Court to strike down KRS 231 as unconstitutional on its face. This extraordinary remedy is available only when a law poses such a threat of chilling free expression that relegating plaintiffs to "as applied" challenges would be an inadequate safeguard of our First Amendment rights. Consequently, the Court's attention has been focused on the threshold issue of whether a facial challenge is available at all. Answering the question has required the Court to examine closely the relationship between K.R.S. 231 and free expression in light of First Amendment precedents. The structure of the statute itself has made this a difficult task. It has some potential to regulate free expression, though how much potential remains somewhat unclear.

KSC still has many options before it. It could procure the facts necessary to support a facial challenge. Alternatively, it could challenge the law as applied in its individual case. Finally, it could challenge the law as facially invalid on due process grounds under the 14th Amendment. What it cannot do at this time is successfully challenge K.R.S. 231 on its face on First Amendment grounds.

The Court's prior order remains in effect.

---

**13.** The Supreme Court has astutely observed that in such cases, "the general application of the statute to areas unrelated to expression will provide the courts a yardstick with which to measure the licensor's occasional speech-related decision," thus ensuring the efficacy of an "as applied" challenge. *Lakewood,* 108 S.Ct. at 2146.