Richard A. CANATELLA, Plaintiff,

v.

Ronald W. STOVITZ, Presiding Judge of the State Bar Court, San Francisco; Judith A. Epstein, Review Judge, San Francisco; Madge S. Watai, Review Judge, Los Angeles; Richard A. Honn, Hearing Judge, Los Angeles; Patrice E. McElroy, Hearing Judge, San Francisco; Alban I. Niles, Hearing Judge, Los Angeles; Joann M. Remke, Hearing Judge, San Francisco; Robert M. Talcott, Supervising Hearing Judge, Los Angeles; James E. Herman, President of the Board of Governors of the State Bar of California; Michael Nisperos, Jr., Chief Trial Counsel, Defendants.

No. C 00–01105 JSW.

United States District Court, N.D. California.

Feb. 16, 2005.

---

Martin H. Kresse—Represented at hearing, Attorney at Law, Alameda, Richard M. Toran, Cotter & Del Carlo, Richard A. Canatella, Cotter & Del Carlo, San Francisco, CA, for Richard A. Canatella, Plaintiff.

Robin Bradle Johansen, Remcho Johansen & Purcell, San Leandro, CA, Jay Michael Goldman, Office of General Counsel, The State Bar of California, San Francisco, CA, Kathleen J. Purcell, Remcho Johansen & Purcell, San Leandro, CA, Lawrence C. Yee, State Bar of California, Office of General Counsel, Marie Mae Moffat, Office of General Counsel, The State Bar of California, Tom Blake, State Attorney General's Office, San Francisco, CA, for Ronald Stovitz Presiding Judge of the State Bar Court, San Francisco, Judith A. Epstein Review Judge, San Francisco, Madge S. Watai Review Judge, San Francisco, Richard A. Honn Hearing Judge, Los Angeles, Patrice E. McElroy

Hearing Judge, San Francisco, Alban I. Niles Hearing Judge, San Francisco, Joann M. Remke Hearing Judge, San Francisco, Robert M. Talcott Supervising Hearing Judge, San Francisco, James E. Herman President of the Board of Governors of the State Bar of California, Michael Nisperos, Jr. Chief Trial Counsel, Defendants.

## ORDER RE BAR DEFENDANTS' MOTION TO DISMISS

WHITE, District Judge.

Now before the Court are the motions of Defendants Ronald W. Stovitz, Judith A. Epstein, Madge S. Watai, Richard A. Honn, Patrice E. McElroy, Alban I. Niles, Joann M. Remke, Robert M. Talcott, James E. Herman and Michael Nisperos, Jr.'s (collectively "Bar Defendants") to dismiss Plaintiff Richard A. Canatella's ("Canatella") Second Amended Complaint ("SAC") for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.[1]

Having carefully reviewed the parties' papers and considered their arguments and relevant legal authority, and good cause appearing, the Court hereby DENIES the Bar Defendants' motion to dismiss for lack of standing and GRANTS the Bar Defendants' motion to dismiss pursuant to Rule 12(b)(6) with prejudice.

## BACKGROUND FACTS AND PROCEDURAL HISTORY[2]

Canatella has practiced law in California since 1972. He is licensed to practice in California and the District of Columbia, and is a member of the bars of the Northern and Central districts of California, the Ninth Circuit Court of Appeals, and the Supreme Court of the United States.

Prior to 1989, Canatella had no record of discipline before any court or bar. Between 1989 and 1996, federal and state courts imposed monetary sanctions against Canatella on twenty-six occasions, for a cumulative total of approximately $100,000. Canatella was sanctioned for such reasons as vexatious litigation, filing of frivolous actions and appeals, and the use of delay tactics. Twenty-five of the twenty-six sanctions arose in the context of two sets of proceedings. In the first, Canatella filed a series of civil actions on behalf of a babysitter and her parents, after appellate reversal of the babysitter's conviction for second degree murder and child abuse. In the second, Canatella represented two civil defendants in a series of collection actions. All of the sanctions levied against Canatella concern his activities as an advocate of his clients' interests in judicial proceedings.

In 1992, the State Bar of California ("State Bar") initiated a disciplinary investigation into the multiple sanctions orders. In response, Canatella filed a section 1983 action seeking to enjoin the State Bar

1. The Bar Defendants' request for judicial notice filed on January 28, 2003, Plaintiff's Request for Judicial Notice filed on August 22, 2004, and Plaintiff's Supplemental Request for Judicial Notice filed on September 15, 2003, are HEREBY DENIED as moot on the grounds that the Court did not need to rely on the material submitted in the requests for judicial notice in reaching its decision. Plaintiff's request filed on November 18, 2004, that

the Court take Judicial Notice of an order issued by the Honorable Martin J. Jenkins on September 16, 2004 is likewise DENIED as moot for the same reasons.

2. The following facts are taken directly from the Ninth Circuit's decision reversing and remanding this matter to the district court. *See Canatella v. State of California,* 304 F.3d 843, 847–48 (9th Cir.2002) (*"Canatella I "*).

from taking disciplinary action against him, and to declare facially unconstitutional several provisions of the California Business and Professions Code and one provision of the California Rules of Professional Conduct.[3] Canatella's case was originally assigned to the Honorable Martin J. Jenkins. While the sanctions orders themselves generally arose for violations of rules of court, such as Federal Rule of Civil Procedure 11(b), or Federal Rule of Appellate Procedure 38, Canatella challenged the state bar statutes and professional rule under which he could ultimately be subject to discipline or disbarment by the State Bar. Judge Jenkins abstained from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Canatella appealed to the United States Court of Appeals for the Ninth Circuit.

Pending appeal, the State Bar filed formal charges against Canatella. Canatella agreed to a stipulated settlement requiring thirty days' actual suspension from legal practice, and an eighteen-month stayed suspension subject to reinstatement of the charges upon any finding of rule violations during the eighteen-month suspension period. The California Supreme Court approved the stipulated discipline on August 19, 1999, in a final disciplinary order. In light of the settlement, the Ninth Circuit dismissed Canatella's appeal as moot on November 17, 1999. *See Canatella v. State Bar*, 203 F.3d 830, 1999 WL 1044803 (9th Cir.1999). Judge Jenkins subsequently denied without prejudice Canatella's motions for vacatur of the abstention order, and for leave to amend his complaint.

In March of 2000, Canatella filed this second section 1983 action, again seeking an injunction prohibiting the State Bar from taking further disciplinary action against him under the challenged provisions, and a declaration that the provisions were unconstitutional. Canatella's principal allegations were that facially and as applied, the challenged provisions are unconstitutionally vague and overbroad, in violation of the First and Fourteenth Amendments. In raising these claims, Canatella alleged a strong likelihood of further State Bar disciplinary charges for a sanction entered against him by a magis-

---

**3.** The challenged provisions state:

(1) "It is the duty of an attorney ... to counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense." Cal. Bus. & Prof.Code § 6068(c);

(2) "It is the duty of an attorney ... not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest." Cal. Bus. & Prof.Code § 6068(g);

(3) "A willful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension." Cal. Bus. & Prof.Code § 6103;

(4) "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension." Cal. Bus. & Prof. Code § 6106;

(5) "A member shall not seek, accept, or continue employment if the member knows or should know that the objective of such employment is: (A) To bring an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person; or (B) To present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by a good faith argument for an extension, modification, or reversal of such existing law." Cal. R. Prof'l Conduct 3–200.

trate judge on January 14, 2000, in a separate action.[4]

Judge Jenkins dismissed Canatella's complaint pursuant to *Rooker–Feldman* and *Younger*, and on the additional grounds that Canatella lacked standing and that his claims were not ripe for review. Canatella appealed that order to the Ninth Circuit.[5]

The Ninth Circuit reversed, holding that Canatella's claim was not barred by the *Rooker–Feldman* or *Younger* doctrines from hearing his claim and that Canatella had sufficiently alleged harm to his rights under the First Amendment such that this Court could properly exercise jurisdiction over his claims. *Canatella*, 304 F.3d at 843. The Ninth Circuit held that Canatella's claims were sufficiently ripe to be heard, and remanded the case to this Court stating that "there is no better time to entertain Canatella's claims than now." *Id.* at 855.

Canatella filed his Second Amended Complaint on July 23, 2003. The Bar Defendants filed their motion to dismiss on August 8, 2003. Judge Martin J. Jenkins recused himself *sua sponte* on October 8, 2003. The matter was assigned to the undersigned and set for hearing on February 20, 2004. On January 16, 2004, Canatella filed a motion for an order to show cause why Defendants' counsel should not be disqualified for alleged violations of California Rule of Professional Conduct 3–

310(C) and set the hearing on his motion to occur simultaneously on February 20, 2004 as well. On September 13, 2004, the Court denied Canatella's Motion for an Order to Show Cause Why Defendants' Counsel Should Not be Disqualified.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.1983). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir.1991). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must assume all factual allegations to be true and must construe them in the light most favorable to the nonmoving party. *North Star*, 720 F.2d at 580. The Court will dismiss the complaint or any claim in it without leave to amend if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987). Dismissal may also be without leave to amend where there has been repeated failure to cure the deficiencies by amendments previously allowed. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

---

**4.** At the time Canatella filed his current section 1983 claim, no state court or State Bar disciplinary proceedings were pending against him. Canatella had reported the magistrate judge's sanctions order to the State Bar, and had appealed that order to the Ninth Circuit. The magistrate judge stayed the order pending resolution of Canatella's appeal of the sanction, which was vacated by the Ninth Circuit on February 20, 2001. *See Chan v. Bay Area Air Quality Mgmt. Dist.*, 2

Fed.Appx. 861, 866, 2001 WL 68503(9th Cir. 2001).

**5.** While that appeal was pending, two significant events occurred. First, as noted, the Ninth Circuit vacated the magistrate judge's sanction order. Second, Canatella completed his probationary sentence under the stipulated settlement and final order issued by the Supreme Court of California in the original State Bar proceedings.

## ANALYSIS

### A. *Canatella I*

A review of *Canatella I* is a natural starting point in evaluating Defendants' motion. As noted above, this Court dismissed Canatella's case based on the *Rooker–Feldman* and *Younger* doctrines, as well as on standing and ripeness grounds. The Ninth Circuit reviewed that decision and concluded that these were not proper grounds for dismissal. In deciding that Canatella had standing to bring the action, the Ninth Circuit stated the following:

> On the record before us, we believe not only that "the parties remain philosophically on a collision course," (citation omitted) but that there is a strong likelihood Canatella may again face discipline under the challenged provisions. His threat of future prosecution is not merely hypothetical and conjectural, but actual.

*Canatella I*, 304 F.3d at 853.

The Ninth Circuit was quite clear about the scope of its holding, noting that the questions it addressed were "strictly jurisdictional" and that it expressed no "view as to the merits of Canatella's claims." *Id.* at 855 n. 16.

The instant motion, by contrast, requires the Court to reach the merits of Canatella's claims by determining whether, even if all facts alleged in his complaint are true, Canatella can state a claim as a matter of law. This exercise is not rendered unnecessary by the Ninth Circuit's holding, as Canatella suggests. (*See* Opposition to Motion to Dismiss ("Opp.") at 13–14, 16–17.) While *Canatella I* recognized that Canatella had standing to bring his claims in federal court—that is, that there

was a "case or controversy" within the meaning of Article III of the United States Constitution—it is the duty of this Court to decide whether Canatella's complaint states a claim upon which relief can be granted. *See Davis v. Passman*, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (distinguishing between standing and stating a cause of action).

### B. Attorney Speech

■ Canatella's complaint concerns the scope of an attorney's right to freely express himself through words or conduct, whether by arguing a motion in a courtroom, filing an action, or even making recommendations to others about whether and how to file actions and assert claims in court. The United States Supreme Court has held that "in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." *Gentile v. State Bar*, 501 U.S. 1030, 1071, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). In a non-public forum such as a courthouse, content-based restrictions on speech are permissible as long as they are reasonable in light of the purpose served by the forum and viewpoint neutral. *See Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 966 (9th Cir.2002). Even outside these contexts, the Supreme Court has observed that lawyers are not "protected by the First Amendment to the same extent as those engaged in other businesses." *Gentile*, 501 U.S. at 1073, 111 S.Ct. 2720. The task for a court in analyzing out-of-court attorney speech is to "engage[ ] in a balancing process, weighing the State's interest in the regulation of a specialized profession against a lawyer's First Amendment interest in the kind of speech . . . at issue." *Id.*[6]

---

**6.** The standard ultimately adopted by the *Gentile* court is the one the Bar Defendants suggest in their reply: whether the speech targeted by the challenged provisions poses a "strong likelihood of material prejudice" to

the integrity and fairness of the judicial system. (Reply at 6 (*citing Gentile*, 501 U.S. at 1074–75, 111 S.Ct. 2720.)) *Gentile*, however, was decided in the context of *pending* cases,

## C. The Challenged Provisions [7]

### 1. *Provisions Targeting Conduct: California Business and Professions Code §§ 6103 and 6106*

The Supreme Court has entertained facial freedom of expression challenges only against statutes that, "by their terms," sought to regulate "spoken words" or patently "expressive or communicative conduct." *Broadrick v. Oklahoma,* 413 U.S. 601, 612–13, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *see also Roulette v. City of Seattle,* 97 F.3d 300, 305 (9th Cir.1996) ("a facial freedom of speech attack must fail unless, at a minimum, the challenged statute is directed narrowly and specifically at expression or conduct commonly associated with expression"). On its face, California Business and Professions Code sections 6103 and 6106 simply do not directly regulate speech or expressive conduct. Section 6103 is directed at ensuring that attorneys do not violate court orders (which is most often done without speaking or engaging in expressive activity), and that they do not violate their oath or other duties as an

attorney. Section 6106 is aimed at subjecting attorneys to discipline for a range of base behavior. While acts that would fall within the reach of these statutes *might* come in the form of speech or other expressive conduct, that is not enough to support a facial challenge. *Roulette,* 97 F.3d at 303, 305 (9th Cir.1996) ("It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment") (*citing City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989)). As a Court all too familiar with attorneys who have engaged in conduct that would fall within the confines of sections 6103 and 6106, the conduct proscribed by these provisions cannot be characterized as "integral to, or commonly associated with, expression." *Roulette,* 97 F.3d at 304.[8] As the Court demonstrates below, however, even if sections 6103 and 6106 did target speech or expressive conduct, Canatella's facial attack against them fails.[9]

the speech relating to which can cause particular problems to the fair administration of the justice system. In *Gentile,* the attorney's client had just been indicted, and the attorney held a press conference that the State believed might detrimentally affect the trial. The attorney was sanctioned as a result, and he filed suit to challenge the validity of the sanction. The Court noted that the "strong likelihood of material prejudice" standard constituted "a constitutionally permissible balance between the First Amendment rights of attorneys in *pending* cases and the State's interest in fair trials." *Id.* at 1075, 111 S.Ct. 2720 (emphasis added). The speech at issue in this case, however, is not limited to that made while a case is pending. For example. California Business & Professions Code section 6068(g) prohibits attorneys from encouraging the "commencement" of an action from any corrupt motive of passion or interest. Therefore, the Court will use the balancing test for out-of-court attorney speech set forth in the text above.

7. Some of the provisions would trigger the *Sammartano* test (see above at section B) because they affect in-court speech or expressive activity. However, the Court applies *Gentile's* stricter test for out-of-court speech throughout this opinion because if a law satisfies the *Gentile* test (which all of the challenged provisions do), *a fortiori* it satisfies the *Sammartano* test.

8. The Court is cognizant of the Ninth Circuit's statement in *Canatella I* that each of the challenged provisions targets expression or conduct commonly associated with expression. 304 F.3d at 853 n. 12. The Ninth Circuit, however, did not decide whether and to what degree the challenged provisions burden speech, and it explicitly declined to reach the merits of Canatella's claims. *Id.* at 855 n. 16.

9. Defendants argue that Plaintiff does not have standing to bring a "facial" or "as-applied" challenge to either § 6103 or § 6106 because the court ordered sanctions against

Before examining each statute, however, the Court notes that both of these provisions satisfy *Gentile's* balancing test. There is little doubt that the State's interest in these provisions outweighs whatever free speech rights attorneys may have in, *e.g.*, "corruption" or the willful violation of a court order. *Gentile*, 501 U.S. at 1073, 111 S.Ct. 2720.

### a. *California Business and Professions Code § 6103*

Section 6103 provides:

A willful disobedience or violation of an order of the court requiring him to do an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension.

### i. Overbreadth

■ The First Amendment doctrine of overbreadth is an exception to the normal rule regarding the standards for facial challenges. A showing that a law punishes a "substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Virginia v. Hicks*, 539 U.S. 113, 118–19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (citations omitted).

■ The overbreadth doctrine is regarded by the Supreme Court as "strong medicine" because it involves the facial invalidation of a law and because it permits individuals standing to raise the claims of others not before the Court. *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908. For these reasons, the Court has said that it will avoid invalidating laws by allowing courts to construe statutes narrowly and thus avoid overbreadth. *Osborne v. Ohio*, 495 U.S. 103, 120, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). Courts may also avoid the "strong medicine" of overbreadth by attempting to sever the unconstitutionally overbroad part of the law from the remainder of the statute. *See, e.g.*, *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).[10]

■ Canatella alleges that section 6103 is overbroad because it does not take into account an attorney's ability to pay fines levied by a court. He also contends that the provision "conflicts with the law of California making it perfectly lawful for an attorney to ignore an order of the court if the attorney believes it unconstitutional." (SAC at ¶¶ 18–19, 22; *Zal v. Steppe*, 968 F.2d 924, 929–30 (9th Cir.1992)). The word "willful," however, incorporates the notion of intentionality. *In re Hallinan*, 43 Cal.2d 243, 251, 272 P.2d 768 (1954). The California Supreme Court has held that during a Bar disciplinary proceeding, a member is provided an opportunity to show that he is truly unable to pay a sanction in order to avoid a sanction. *See, e.g., In re Broderick*, 3 Cal. State Bar Ct. Rptr. 138, 148–49, n. 8 (Cal.Bar Ct.1994); *In re Laden*, 4 Cal. State Bar Ct. Rptr. 678 (2004).

Plaintiff's claim that § 6103 conflicts with *Zal* is likewise rejected. Section 6103 specifically states that attorneys may be

---

Plaintiff "fall squarely within the provisions of section 6103 and 6016." (*See* Mot., p. 28.) Because the Court reaches the merits of Plaintiff's claims and finds them insufficient, Defendants' motion to dismiss on this ground is DENIED as moot.

**10.** Canatella does not ask the Court to sever any portions of any of the challenged provisions. Instead, he argues that the suspect provisions should be voided *in toto*. (*See, e.g.*, Opp. at 25.)

disciplined for violating only court orders that an attorney "ought in good faith" to comply with. Bus. & Prof Code § 6103. This provision ensures that attorneys will not be disciplined for failing to comply with an unjust court order. The provision narrows the scope of the law, and hence, allows for an attorney to exercise his or her right to disobey a court order the attorney believes to be unconstitutional. *Zal,* 968 F.2d at 929–30. Canatella's overbreadth challenges to section 6103 fail as a matter of law.

ii. Vagueness [11]

■ The vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Unduly vague laws violate due process whether or not speech is regulated. *See, e.g., Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (declaring vagrancy law unconstitutional). Courts look with special scrutiny at allegedly vague laws that restrict speech. The Supreme Court has observed that freedom of speech is "delicate and vulnerable, as well as supremely precious in our society . . . [and] the threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). That is not to say, however, that a legislature must draft its laws with mathematical certainty. As the Ninth Circuit has noted, "perfect clarity is not required even when a law regulates protected speech." *Cal. Teachers Ass'n v. State Bd. of Educ.,* 271

F.3d 1141, 1150 (9th Cir.2001). Even when a law implicates First Amendment rights, "the Constitution must tolerate a certain amount of vagueness." *Id.* at 1151.

■ Canatella's vagueness challenge with respect to § 6103 centers on the word "willful." He alleges that the word is "totally subjective and vague." (SAC at ¶ 21.) The word "willful" is ubiquitous in the law and has the effect of protecting against liability for inadvertent or unintentional acts. In this way, the inclusion of "willful" can therefore actually can make a law *less* vague. *See United States v. Makowski,* 120 F.3d 1078, 1080 (9th Cir.1997) ("a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed") (quoting *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.,* 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). The proposition that the inclusion of the word "willful" in a statute renders a law unconstitutionally vague is so novel that apparently there is no case standing for it. Certainly Canatella has cited the Court to none. This argument therefore cannot stand and the claim is dismissed.

b. *California Business and Professions Code § 6106*

Section 6106 provides:

The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor, constitutes a cause for disbarment or suspension.

i. Overbreadth

■ Canatella contends that this provision is overbroad because the law

---

**11.** Because the Court reaches the merits of Plaintiff's vagueness claims, the State Bar Defendants' motion to dismiss these claims on the grounds that Plaintiff is judicially estopped from asserting them is DENIED as moot.

"reach[es] a substantial amount of constitutionally protected conduct, namely, judicial or court speech ...." (SAC, ¶ 26.) Section 6106, however, is no "broader than necessary to protect the State's interests" and is consistent with a State's "right to require high standards of qualification, including good moral character.". *Gentile,* 501 U.S. at 1077, 111 S.Ct. 2720; *Schware v. Bd. of Bar Exam. of State of N. Mexico,* 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (citations omitted). The California Supreme Court has consistently stressed that in evaluating an attorney's conduct in disciplinary proceedings the "principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys." *Jackson v. State Bar,* 23 Cal.3d 509, 514, 153 Cal. Rptr. 24, 591 P.2d 47 (1979). The statute recognizes this concern and is limited to ensuring that attorneys who possess a license to practice law conform their conduct to the standards of professional conduct. *Connally,* 269 U.S. at 391, 46 S.Ct. 126. The wording of the statute does not suggest that its unconstitutional applications substantially exceed its constitutional applications. *New York v. Ferber,* 458 U.S. 747, 770, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). For this reason, Canatella's overbreadth challenge to § 6106 is rejected.

#### ii. Vagueness

■ Canatella's quarrel with § 6106 is that the terms "moral turpitude, dishonesty, or corruption" are "vague and incomprehensible." (SAC at ¶¶ 23, 24; Opp. at 32.) The Supreme Court has rejected the argument that the term "moral turpitude" is unduly vague. *Jordan v. De George,* 341 U.S. 223, 231, 71 S.Ct. 703, 95 L.Ed. 886 (1951) ("No case has been decided holding that the phrase ["moral turpitude"] is vague, nor are we able to find any trace of judicial expression which hints that the phrase is so meaningless as to be a deprivation of due process"). Neither is the word "dishonesty" unconstitutionally vague. *Wayne v. Bureau of Private Investigators & Adjusters,* 201 Cal.App.2d 427, 440, 20 Cal.Rptr. 194 (1962) ("It would be almost impossible to draft a statute which would specifically set forth every conceivable act which might be defined as being dishonest.") Finally, the word "corruption" is not unconstitutional for want of sufficient meaning. *See, e.g., United States v. Thompson,* 76 F.3d 442, 452 (2d Cir.1996) ("A prohibition against corrupt acts is clearly limited to ... constitutionally unprotected and purportedly illicit activity.")

In looking at the above, it is worth reviewing language from *Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), in which the court held that the standard for terminating federal employees under the Lloyd–La Follette Act—for "such cause as will promote the efficiency of the service"—was not unduly vague:

There are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest. The general class of offense to which ... [the provisions are] directed is plainly within [their] terms..., [and they] will not be struck down as vague, even though marginal cases could be put where doubts might arise.... We do not believe that Congress was confined to the choice of enacting a detailed code of employee conduct ....

This reasoning applies with equal force to the California legislature's attempt, via section 6106, to address improper attorney behavior. Canatella thus fails to state a claim as to section 6106.

2. *Provisions Directed at Speech or Expressive Conduct: California Business and Professions Code §§ 6068(c) and (g), Rule of Professional Conduct 3–200*

a. *California Business and Professions Code § 6068(c)*

■ Section 6068(c) provides:

It is the duty of an attorney ... to counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense.

**12.** But Canatella's concession only extends to the maintaining of truly "sham lawsuits." (Opp. at 3 n. 3 (emphasis in original)). Canatella goes on to note that he objects to the discipline rules being applied to restrain "the advocacy of attorneys seeking redress on behalf of clients for allegedly unconstitutional acts of government officials." (*Id.*) Canatella's emphasis on the word "sham" and subsequent comments indicate that he believes truly sham lawsuits are legitimately punishable, but that his type of work does not fall in this category. Of course, this Court is not reviewing the particulars of a specific disciplinary action taken by the State Bar against Canatella, nor is the Court evaluating anything that has transpired in the past. As Canatella has made quite clear, "this case is *not* about the historical record." (Opp. at 1 (emphasis in original)). If the State Bar should, in the future, discipline Canatella for the filing of a pleading or lawsuit that is *not* sham, he has recourse to the courts in the form of an "as applied" challenge.

To the extent Canatella suggests that a frivolous "constitutional or civil rights" claim encompassing criticism directed explicitly at the State is entitled to more First Amendment protection than a frivolous commercial action (Opp. at 2, 23, 26), the Court is dubious. The

Canatella concedes that a law prohibiting attorneys from "maintaining" frivolous lawsuits, one aspect of section 6068(c), is not problematic.[12] To the extent that section 6068(c) reaches out-of-court attorney speech by prohibiting attorneys from "counseling" the bringing of only legal and just actions and pleadings, the court must engage in a balancing test to ascertain the law's validity. The task for a court in analyzing laws that target out-of-court attorney speech is to "weigh[ ] the State's interest in the regulation ... against [the] lawyer's First Amendment interest in the kind of speech ... at issue." *Gentile*, 501 U.S. at 1073, 111 S.Ct. 2720. Here, there is no doubt that the state has a strong interest in ensuring that its lawyers adhere to the highest standards of conduct. Counseling illegal or unjust actions or pleadings has a direct, adverse effect on the administration of the courts.[13] The

authority to which Canatella points for this proposition (*Gentile*, 501 U.S. at 1034, 111 S.Ct. 2720; *In Re Primus*, 436 U.S. 412, 432, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978)) does not support it. Referring to the frivolous filing of civil rights-type versus commercial lawsuits, the Bar Defendants note that "[b]oth are equally harmful to the civil justice system and to the parties who must defend them." (Rep. at 7.) The Court agrees. The Ninth Circuit's statements on this issue are telling: "we will sanction misconduct even where the responsible party claims noble motives.... [S]tatus as a public interest law firm or the nature of a claim does not confer immunity from attorneys' fees for bringing and maintaining frivolous lawsuits." *Lockary v. Kayfetz*, 974 F.2d 1166, 1172 (9th Cir.1992).

**13.** Plaintiff's reliance on *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 536, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001) is misplaced. In that case, the United States Supreme Court struck down a provision in the Legal Services Corporation Act that restricted attorneys working for organizations that provided legal advice for welfare benefit claims from "arguing to a court that a state statute conflicts with a federal statute or that either a state or federal statute by its terms or in its application is violative of the United States Constitu-

Court has little difficulty in holding that an attorney's right to counsel illegal and unjust actions is outweighed by the state's interest in maintaining the integrity of its justice system.[14]

### i. Overbreadth

■ Section 6068(c) is no "broader than necessary to protect the State's interests." *Gentile*, 501 U.S. at 1077, 111 S.Ct. 2720. Section 6068(c) ensures that attorneys counsel clients to bring complaints and maintain arguments before the court that are supported by law or facts. Looking at the wording of the statute, the Court cannot say that its unconstitutional applications substantially exceed its constitutional applications. *New York v. Ferber*, 458 U.S. 747, 770, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). For this reason, Canatella's overbreadth challenge cannot succeed.

### ii. Vagueness

■ Canatella's vagueness challenge to section 6068(c) focuses on the words "legal and just," which he claims are "unintelligible and vague." (SAC at ¶ 8.) The Supreme Court, however, has held that the words "just and reasonable" are not unduly vague. *Am. Tel. & Tel. Co. v. United States*, 299 U.S. 232, 246, 57 S.Ct. 170, 81 L.Ed. 142 (1936). The Court cannot say that the words "legal and just" are any less clear.

Canatella also argues that the "as appear to him or her" language in section 6068(c) invites a subjective inquiry into the attorney's state of mind that lulls the attorney who has "crossed the line" but does not know it into a false sense of security. (SAC at ¶¶ 8–9; Opp. at 21–25.) However, the California Supreme Court has adopted the "reasonable attorney" standard for determining violations of section 6068(c), which serves to narrow the scope of the statute. *Sorensen v. State Bar*, 52 Cal.3d 1036, 1043, 277 Cal.Rptr. 858, 804 P.2d 44 (1991). The Court also notes that Canatella's concern about fair notice is remedied in part by the fact that Rule 11 of the Federal Rules of Civil Procedure and California Code of Civil Procedure section 128.7 provide a "safe harbor," which allows an attorney who has filed an allegedly groundless action or pleading notice of the grounds on which a sanction may be sought and an opportunity to cure.

### iii. Petition Clause

Canatella further contends that section 6068(c) violates the Petition Clause of the First Amendment. (SAC at ¶ 13.) The First Amendment right to petition the government for a redress of grievances, which is "an assurance of a particular freedom of expression,"[15] is "generally subject to the same constitutional analysis" as the right to free speech. *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (noting that although "the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis"). Because the Court has already held that Canatella's

---

tion." There, unlike here, the challenged provision was not viewpoint neutral and had the effect of "insulat[ing] the Government's interpretation of the Constitution from judicial challenge." *Id.* at 548, 121 S.Ct. 1043. The provisions challenged by Canatella place no such restriction on an attorney's speech but rather impose a content-neutral restriction on in-court frivolous, vexatious, or misleading speech.

**14.** Of course, if an attorney is actually disciplined under section 6068(c) for speech he or she deems protected by the First Amendment, an "as applied" challenge would lie. The Court is not presented with that case here.

**15.** *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985).

Speech Clause claims fail, so must his Petition Clause claim.

### iv. Under–Inclusiveness

 Finally, Canatella asserts that section 6068(c) is *under*-inclusive. (SAC at ¶ 12.) A regulation of speech can be under-inclusive when the state combines the operation of a general speech restriction with an exemption for one or more parties to the debate. *See City of Ladue v. Gilleo*, 512 U.S. 43, 51, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (reviewing law that banned all residential signs but those falling within one of ten exemptions). Such a regulation might "attempt to give one side of a debatable public question an advantage in expressing its views to the people," and thereby "control ... the search for political truth." *Id.* Nothing of the kind is at work here. Section 6068(c) merely prohibits any attorney from counseling or maintaining unjust or illegal actions or pleadings, and provides no exemptions. Canatella fails to state a claim with respect to section 6068(c).

### v. Equal Protection Claim

Petitioner also claims that § 6068(c) violates the Equal Protection Clause. (SAC, ¶ 11 (alleging that § 6068(c) violates "equal protection because there is no guarantee that attorneys similarly situated to Plaintiff will be treated the same way under the allegedly vague and overbroad discipline statutes.")) Plaintiff does not address this portion of the Bar Defendants' motion to dismiss in his Opposition, but it appears that he bases his equal protection claim on the theory that because the language of § 6068(c) is vague, attorneys engaging in the same improper conduct will not be consistently disciplined. This claim, therefore, appears to be Plaintiff's due process challenge recast as an Equal Protection claim. Because the Court rejects Plaintiff's claim that the statute is vague and overbroad, Plaintiff's Equal Protection fails as well.

### b. *California Business and Professions Code § 6068(g)*

Section 6068(g) states that:

It is the duty of an attorney ... not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest.

 First, it is clear that section 6068(g) satisfies the *Gentile* balancing test. *See Gentile*, 501 U.S. at 1073, 111 S.Ct. 2720. The State's interest in preventing attorneys from using the justice system as a tool to harass or vex another—the type of conduct at which section 6068(g) is aimed—outweighs the attorney's right to engage in this kind of speech.

### i. Overbreadth

 Canatella alleges that section 6068(g) is overbroad because it lacks a provision protecting attorneys who bring claims that are reasonable but who do so for improper reasons. SAC at ¶ 14. Canatella seems to be arguing that an attorney has a First Amendment right to file an action or pleading from a corrupt motive so long as he has a proper legal basis for doing so. It is interesting that he should press this claim, given that in his Opposition he concedes that "raising issues for the sole purpose of harassing opponents or delaying required payments" and "interfering with the due administration of justice in bad faith and with wrongful purpose" are proper targets of the disciplinary laws. (Opp. at 3–4.)

The Ninth Circuit has observed that sanctions are proper where an action is "clearly frivolous, legally unreasonable or without legal foundation, *or* brought for an improper purpose." *Lockary v. Kayfetz*, 974 F.2d 1166, 1172 (1992) (rejecting any

constitutional right to abuse the court system) (emphasis added). *See also In re Itel,* 791 F.2d 672, 675 (9th Cir.1986). This latter problem is precisely what section 6068(g) is aimed at discouraging. It is also worth noting that Rule 11 of the Federal Rules of Civil Procedure makes sanctionable the bringing of an action "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *See In re Sawyer,* 360 U.S. 622, 646, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959) (stating that "a lawyer belongs to a profession with inherited standards of propriety and honor[.] ... He who would follow that calling must conform to those standards") (Stewart, J., concurring). Canatella fails to state an overbreadth claim with respect to section 6068(g).

#### ii. Vagueness

■ Canatella also takes issue with the language "corrupt motive of passion or interest" in section 6068(g). SAC at ¶¶ 14–15. Having already found that the word "corruption" has a definable substance (see above at section (C)(b)(i)), the Court cannot see how the term "corrupt motive of passion or interest" is any less clear. Thus, Canatella's vagueness claim with respect to section 6068(g) also fails.

#### iii. Petition Clause

Canatella further alleges that section 6068(g) violates the Petition Clause. (SAC at ¶ 16.) Again, however, because the Court finds that section 6068(g) does not violate free speech rights under the First Amendment, Canatella's Petition Clause claim also fails. (*See* discussion of section 6106, above.)

#### iv. Under–Inclusiveness

As he does with respect to section 6068(c), Canatella alleges that section 6068(g) is under-inclusive. This claim, however, fails for the same reason that his

claim with respect to section 6068(c) failed. (*See* discussion of section 6068(c), above.)

#### c. *California Rule of Professional Conduct 3–200*

Rule 3–200 provides that:

A member shall not seek, accept, or continue employment if the member knows or should know that the objective of such employment is: (A) To bring an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person; or (B) To present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by a good faith argument for an extension, modification, or reversal of such existing law.

Rule 3–200 reads almost verbatim to parts of Rule 11 of the Federal Rules of Civil Procedure. Canatella devotes all of two lines in his complaint and six lines in his opposition to Rule 3–200, where he suggests that the language "harassing or maliciously injuring" is unduly vague. (SAC at ¶ 27; Opp. at 33.)

■ First, the Court notes that this provision easily satisfies the *Gentile* balancing test. *See Gentile,* 501 U.S. at 1073, 111 S.Ct. 2720. The State's interest in preventing the filing of frivolous lawsuits and those meant merely to harass another outweighs the attorney's right to engage in this kind of speech. Due to the fact that the provision prohibits a narrow range of conduct limited to filing or maintaining frivolous and unsupported claims, the Court does not find that the constitutional applications of Rule 3–200 would likely exceed the unconstitutional applications. The Court also finds that the term "harassing or maliciously injuring" is not unduly vague. The terms "malicious" and "harassing" are used repeatedly through-

out California's penal and civil code such that a reasonable person would know what conduct is prohibited. *See, e.g., People v. McClelland*, 42 Cal.App.4th 144, 151, 49 Cal.Rptr.2d 587 (1996) (terms "maliciously" and "harassing" used in stalking statute codified at Cal.Penal Code § 646.9 was not unconstitutionally vague; the term "maliciously" has "been part of the Penal Code lexicon since 1872"); *Downey Venture v. LMI Ins. Co.*, 66 Cal.App.4th 478, 494, 78 Cal.Rptr.2d 142 (1998) (*citing Sheldon Appel v. Albert & Oliker*, 47 Cal.3d 863, 874, 254 Cal.Rptr. 336, 765 P.2d 498 (1989)) (stating that in the context of the tort of malicious prosecution, "malice ... relates to subjective intent of or purpose of [the conduct] and may range anywhere from open hostility to indifference"). Inquiry into an individual's subjective intent in evaluating whether the individual is liable is common and does not necessarily render the statute unconstitutionally vague. Canatella therefore cannot maintain his claim that the term "harassing or maliciously injuring" as used in Rule 3-200 is unconstitutionally vague.[16]

### D. Canatella's "As Applied" Challenges

■ In an as-applied challenge, there is a narrow focus on the particular plaintiff's behavior and whether the statute is constitutional as applied to him. *Roulette v. City of Seattle*, 97 F.3d 300, 312 (9th Cir.1996). Here, Canatella's "as applied" claims look very much like his facial claims. (SAC at ¶¶ 5, 6, 13; Opp. at 17–20.)[17] The Bar Defendants contend that Plaintiff is unable to state an "as applied" claim because he lacks standing to assert such claims in the absence of "a concrete set of facts." (Mot., p. 26.)

■ The conduct that puts Canatella at risk of imminent prosecution—zealous advocacy of his clients' causes—is the same conduct that he argues is chilled by the existence of the challenged provisions, which he attacks on facial grounds. Canatella alleges in his complaint no specific, present disciplinary action being taken by the State Bar against him, nor does he allege anything that indicates that his particular kind of advocacy puts him at risk in a unique way when compared to other attorneys who similarly "push the envelope" in the types of claims they bring.[18] Otherwise, a finding that the statutes are constitutional on their face necessarily means that they are constitutional as applied to Canatella. Therefore, because the Court finds the challenged provisions constitutional, Canatella fails to state an as-applied claim with respect to them.

### E. California Civil Code § 47(b)(2)

■ Canatella alleges that the State Bar cannot discipline him in connection with his in-court expression because that expression is protected by the absolute

---

**16.** Canatella also suggests—in his Opposition (not in his SAC)—that the word "defense" lacks sufficiently clear meaning to give attorneys fair notice. (Opp. at 33.) The Court rejects this out of hand. Canatella points the Court to no case standing for this proposition, nor could the Court find one, perhaps because the word "defense" is so widespread and commonly used in the law that no one has seen fit to challenge it on vagueness grounds. Attorneys of "common intelligence" do not have to "guess at its meaning and [do not] differ as to its application."

*United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

**17.** One scholar has suggested that overbreadth and vagueness claims are, by nature, facial. E. Chemerinsky, *Constitutional Law*, § 11.2 (2d Ed.2002) ("Both vagueness and overbreadth involve facial challenges to laws").

**18.** Canatella states in his opposition that "this case is not about the historical record even as [the Bar Defendants] attempt to portray it." (Opp., p. 1.)

privilege provided by California Civil Code section 47(b)(2). (SAC at ¶ 42). The litigation privilege, as codified in Civil Code section 47(b)(2), shields, among other things, any "publication or broadcast" made "in any . . . judicial proceeding." Its "principal purpose is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Olszewski v. Scripps Health,* 30 Cal.4th 798, 830–31, 135 Cal.Rptr.2d 1, 69 P.3d 927 (2003). Canatella points the Court to no case applying section 47(b)(2) to shield an attorney from the consequences of inappropriate courtroom conduct. Indeed, if Canatella's interpretation of section 47(b)(2) is correct, then the provisions he challenges in this case would be substantially gutted.[19] The Court concludes that section 47(b)(2) does not insulate an attorney from disciplinary proceedings based on his in-court actions, and thus this claim fails as well.

### F. State Bar's Role as Disciplinary Entity

■ Canatella appears to argue that because of the reality that trial judges are the front line regulators of attorney conduct, the State Bar somehow concedes that it lacks the power to regulate attorney conduct. He argues this position in his Opposition but does not allege it in his complaint. (Opp. at 33–35.) In any event, this claim lacks merit. The California Supreme Court has long recognized and relied upon the Bar's disciplinary authority and responsibility. *See Obrien v. Jones,* 23 Cal.4th 40, 48, 96 Cal.Rptr.2d 205, 999 P.2d 95 (2000) (State Bar's "assistance to [the] court in the disciplinary process is an integral part of the judicial function"). The Court fails to see how the State Bar's recognition of the inherent power of the courts to discipline attorneys is inconsistent with its role as an additional disciplinary entity. Canatella fails to state a claim with respect to this issue.

### G. Equal Protection and Due Process Claims

■ Pursuant to Cal. Bus. & Prof. § 6086.10(a), "[a]ny order imposing a public reproval on a member of the State Bar shall include a direction that the member shall pay costs. In any order imposing discipline, or accepting a resignation with a disciplinary matter pending, the Supreme Court shall include a direction that the member shall pay costs." If the attorney who is charged is exonerated, the State Bar must reimburse the attorney in an amount determined by the State Bar to be the reasonable expenses incurred in preparing for the hearing. *See* Cal. Bus. & Prof. § 6086.10(d). According to Canatella, the State Bar has a financial interest in imposing a public reproval or discipline on an attorney in order to collect the fees and costs associated with the disciplinary hearing. (SAC ¶ 37 ("the State Bar is in competition with the attorneys it prosecutes and has a pecuniary incentive in finding attorney conduct (or, alleged misconduct) worthy of public discipline, in that it can recover its costs in the preparation or hearing of disciplinary proceedings, and costs incurred in the administrative processing of the disciplinary proceeding only when the proceeding results in public disciplines")). Canatella alleges that his due process rights are being violated by this "pecuniary incentive."[20]

---

19. In construing statutes, the Court is guided by the well-settled principle that, where possible, laws should be read to avoid conflict. *Walters v. Weed,* 45 Cal.3d 1, 9, 246 Cal.Rptr. 5, 752 P.2d 443 (1988) ("statutes that are apparently in conflict should, if reasonably possible, be reconciled").

20. Canatella clarified at the hearing that he is alleging that his due process rights, and not Equal Protection rights, are violated by the

In *Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 714 (9th Cir.1995), the Ninth Circuit held that "[t]he fact that fines imposed in attorney disciplinary proceedings are paid to the treasury of the State Bar does not establish an impermissible financial interest ... no evidence suggests that [the judges of the State Bar] are in any way dependent on the amount of fines collected or that the State Bar would be unable to pay the salaries of Bar Court judges without the money collected in disciplinary proceedings." To the extent that Canatella's claim is based on allegations that this alleged "pecuniary incentive system" violates his due process rights, he does not state a claim. *Id.* Based on his statement that "the extensive hearing and review procedures in the State Bar Court satisfy due process requirements of notice and a meaningful opportunity to be heard," Plaintiff is unable to allege that some other aspect of the State Bar disciplinary procedure, aside from the alleged "pecuniary incentive system," violates his due process rights. (SAC, ¶ 33.)

## H. State Bar Judges as Defendants

■ Article III prevents federal courts from adjudicating claims when the parties lack the required adverse legal interests. *Grant v. Johnson*, 15 F.3d 146, 147 (9th Cir.1994). In the typical prospective assault on the constitutionality of a state statute, "the state judge is not a proper party defendant under section 1983 because he has no stake in upholding the statute: he is not the plaintiff's adversary, and the complaint should be dismissed for

failure to state a claim upon which relief can be granted." *Id.* at 148 (quoting *R.W.T. v. Dalton*, 712 F.2d 1225, 1232 (8th Cir.1983)).

The parties seem to be in agreement that, at least as a general matter, judges adjudicating cases pursuant to state statutes may not be sued under section 1983 in a suit challenging the state law. (Mot. at 25; Opp. at 10–11). Both sides cite the following language from *Grant* which provides the rationale for its holding:

> no "case or controversy" exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute. Judges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy....Almost invariably, they have played no role in the statute's enactment, they have not initiated its enforcement, and they do not even have an institutional interest in following their prior decisions (if any) concerning its constitutionality if an authoritative contrary legal determination has subsequently been made (for example, by the United States Supreme Court). In part for these reasons, one seeking to enjoin the enforcement of a statute on constitutional grounds ordinarily sues the enforcement official authorized to bring suit under the statute; that individual's institutional obligations require him to defend the statute. One typically does not sue the court or judges who are supposed to adjudicate the merits of the suit ....'

*Grant*, 15 F.3d at 148 (quoting *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 21–22 (1st Cir.1982)).[21]

"pecuniary bias" that exists in the State Bar proceedings. (*See* February 20, 2004 Hearing Transcript, 26:3–28:16; 41:22–43:4.) Canatella also confirmed that he is also not pursuing a selective prosecution claim based on these facts. (*Id.* stating that "I thought there might be some selective prosecution equal protection claim, but now that we've sorted it

out, your Honor, I'm in accord that it is a due process claim.")

**21.** Not content to rest on this passage from *Grant*, the Bar Defendants argue that "[t]he Ninth Circuit has also unequivocally held that California State Bar Court proceedings are judicial in nature and that the judges of the

Canatella contends that *Grant* does not apply here. He argues that the defendant State Bar Court judges *do* have a "personal or institutional stake" in this controversy.[22] There is another argument that Canatella perhaps mentions, but does not develop, which is that the challenged provisions, among others, provide the State Bar Court's very *raison d'etre*. Here, if the challenged provisions are struck down, powerful weapons in the State Bar Court's arsenal for disciplining attorneys—which is the essence of the State Bar Court's function—would be lost. Thus, this is not a "typical" case against a judge under section 1983. *Grant*, 15 F.3d at 148. The Court concludes that the adversity of interest necessary to demonstrate the justiciability of a dispute between Canatella and the State Bar Court judges exists in the present case and that the latter are therefore properly a part of this action. Therefore, the Bar Defendants' motion to dismiss Plaintiff's claims against the State Bar Court judges on the grounds that Plaintiff fails to state a cognizable claim against them is DENIED.

## I. Supremacy Clause/Exclusive Jurisdiction of the Federal Courts

Canatella alleges in his complaint that the State Bar oversteps its jurisdictional limits and violates the Supremacy Clause by basing the decision to initiate disciplinary proceedings against him on its own interpretation of federal law. (*See* SAC ¶¶ 28–31 (stating that "the state court lacks the inherent jurisdiction to make any

determinations regarding the propriety of conduct in federal litigation")). What Canatella appears to be claiming is that his conduct in federal court is based on his subjective interpretation of federal law, and that for the State Bar to find that his conduct was inappropriate, it would be required to evaluate whether Canatella's subjective interpretation of federal law was reasonable. (*Id.* at ¶ 28, ln. 12–17.) He also alleges that the State Bar may not interfere with the federal court disciplinary proceedings because "a federal court has the undisputed power to control admission to its bar and to discipline attorneys who appear before it." (*Id.* at ¶ 29.) If the federal courts decline to suspend or disbar an attorney following disciplinary proceedings, Canatella alleges that the State Bar may not pursue disciplinary proceedings based on the same conduct. (*Id.* at ¶ 30.) He also claims that if the federal courts do sanction an attorney, the State Bar should not be allowed to rely on the order imposing sanctions in the State Bar proceedings as proof of attorney misconduct. (*Id.* at ¶ 31.)

■ Canatella cannot state a claim that the Supremacy Clause has been violated. The United States Supreme Court has recognized the State's sovereign right and responsibility to regulate the conduct of attorneys within its borders. *See, e.g., Hoover v. Ronwin,* 466 U.S. 558, 569 n. 18, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984). Canatella apparently concedes this issue, because he offers nothing by way of re-

---

California State Bar Court are entitled to quasi-judicial immunity." Mot. at 26 (*citing Hirsh v. Justices of Supreme Court,* 67 F.3d 708, 715 (9th Cir.1995)). While the Ninth Circuit held that State Bar Court judges are immune from suits seeking monetary damages, it did not address whether individual State Bar Court judges can be sued for injunctive relief in their official capacities, as they are in this case.

**22.** *Obrien v. Jones,* 23 Cal.4th 40, 54, 96 Cal. Rptr.2d 205, 999 P.2d 95 (2000), cited by Canatella, is inapposite. That case in fact rejected the contention—put forth by Canatella—that State Bar Court judges are "judicial assistants," "subordinate judicial officers," "special masters," or "referees."

sponse in his opposition. Based on the foregoing, he fails to state a claim as to this issue and his Supremacy Clause claim is dismissed.

## J. Procedure for Abatement

Canatella alleges in his complaint that "[t]he challenged discipline statutes contain no procedural safeguards to ensure that the initiation of disciplinary action against attorneys does not interfere with ongoing federal discipline proceedings." (SAC at ¶¶ 32–34; Hearing Trans. 28:17–23.) [23] As a result he claims that his due process rights have been violated. (*Id.* at 28:17–23.) Canatella's argument is directly contradicted by Rule 116 of the California State Bar Rules of Procedure, which provides for abatement "upon motion by any party." This provision was highlighted by the Bar Defendants in their motion to dismiss but Canatella did not provide any response in his opposition. Because a procedure exists that addresses the injury claimed by Canatella here, his claim fails and is dismissed.

## K. Plaintiff's Complaint is Dismissed Without Leave to Amend.

Leave to amend "shall be freely given when justice so requires" to facilitate a proper decision on the merits. Fed. R.Civ.P. 15(a). This standard is applied with "extreme liberality." *See McKenzie v. Milpitas,* 738 F.Supp. 1293, 1298 n. 5 (N.D.Cal.1990); *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987). Leave to amend lies "within the sound discretion of the trial court." *United States v. Webb,* 655 F.2d 977, 979 (9th Cir.1981). When there is a lack of prejudice to the opposing party and the amend-

ed complaint is not frivolous, or made as a dilatory maneuver in bad faith, the court should exercise its discretion to grant leave. *See United States v. Pend Oreille,* 926 F.2d 1502, 1511 (9th Cir.1991), *citing Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973).

The Court concludes that any amendment to Canatella's complaint would be futile and as a result, declines to exercise its discretion to grant Canatella leave to file an amended complaint. Canatella has already had two previous opportunities to amend his complaint. Additional facts or claims alleged by Canatella in a third amended complaint would not cure the underlying deficiencies in his complaint, and would likely not alter the Court's analysis that Canatella does not state a claim as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES the Bar Defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of standing, and GRANTS the Bar Defendants' motion to dismiss Canatella's Second Amended Complaint with prejudice pursuant to Rule 12(b)(6). The clerk is directed to close the file.

### IT IS SO ORDERED.

[23]. At the hearing, Canatella claimed that his due process rights were violated by the State Bar's failure to abate disciplinary proceedings "while the target for discipline completes the proceedings in a state or federal court that give rise to the discipline, that the Bar should abate awaiting the outcome of the federal or state proceedings; that doesn't happen oftentimes and we say that is a due process violation." (Hearing Trans. 28:19–23.)